IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Ann Watkins, *et al.*,                                            Case No. 3:16CV01925

        Plaintiffs,

    v.                                                                             **ORDER**

Honeywell International, Inc.,

        Defendant.

      This is a class action arising out of defendant Honeywell International Inc.'s (Honeywell) decision to terminate retiree healthcare benefits. Plaintiffs Ann Watkins and James Ulciny represent all retirees whom that decision affects, all of whom formerly were represented by Local 533 of the Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW or Union). That local was the plaintiffs' collective bargaining representative at Honeywell's now-closed plant in Fostoria, Ohio. At issue in this case is a provision in the last UAW-Honeywell collective bargaining agreements (CBA) relating to healthcare benefits for retirees and their spouses, eligible dependents, and surviving spouses.

      Claiming that the CBAs guaranteed lifetime healthcare benefits, plaintiffs challenge Honeywell's unilateral modification of benefits as a breach of contract and violation of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq*.

      Jurisdiction is proper under 28 U.S.C. § 1331.

      Pending is defendant's motion to dismiss, (Doc. 15), which plaintiffs oppose. (Doc. 19).

For the reasons that follow, I grant defendant's motion to dismiss.[1]

**Background**

Defendant Honeywell owned and operated the Fostoria plant from 1973 until 2011.[2] Throughout that period, the UAW negotiated a series of different CBAs, each governing employment terms and conditions, including retiree healthcare benefits.[3] Each CBA was effective for a specific time frame–typically three years. At the end of the designated period, the ensuing CBA followed.

The last negotiated CBA ("2009 CBA") terminated in 2011–the same year Honeywell sold the Fostoria plant. There has been no successor CBA between Honeywell and Fostoria employees or retirees since 2011.

Like previous Honeywell-UAW CBAs, the 2009 CBA incorporated an Insurance Program that, among other things, provided Fostoria retirees the opportunity to enroll in healthcare plans, to which defendant agreed to make certain monetary contributions. With respect to healthcare benefits for retired employees, the Insurance Program states, "The *continue*d coverage to which retired employees *are entitled* will be only the hospital-surgical-medical-drug-dental-hearing aid coverages

---

[1] Also pending is plaintiffs' motion for summary judgment and permanent or, in the alternative, preliminary injunction seeking to prevent Honeywell from terminating the healthcare benefits at issue as of 11:59 p.m. on December 31, 2016. (Doc. 21). Because I grant defendant's motion to dismiss, plaintiffs' motion is moot.

[2] Previously, Ford Motor Company owned the Fostoria plant. In 1967, Ford and UAW negotiated fully-paid retiree healthcare benefits. Those benefits were in a separate document–the Insurance Program–which the 1976 CBA and each later CBA incorporated by reference. In 1973, defendant (then Bendix) bought the Fostoria plant from Ford and assumed the Ford-UAW CBA.

[3] Each retiree in the class retired under one of the Honeywell-UAW CBAs dating back to the 1970s. With respect to the language governing retiree healthcare benefits, for purposes of this opinion, I quote the 2009 CBA–the last effective CBA–and the 1976 Insurance Program.

as described in Section 1 above." (Doc. 19, Ex. 2) (emphasis added).  The Insurance Program also provided healthcare benefits for retirees' eligible dependents and surviving spouses.

Although the 2009 CBA expired in 2011, Honeywell's underwriting of retiree healthcare benefits for Fostoria retirees has continued as if the 2009 CBA were still in effect.  This continued for more than four years.

In December, 2015, however, Honeywell ultimately decided to terminate its contributions beginning January 1, 2017.  The company notified Fostoria retirees of its decision by letter dated December 28, 2015; thereby, according to Honeywell, it provided plaintiffs with adequate notice to enable them to obtain replacement healthcare coverage.

In addition to notice of the intended termination, defendant provided plaintiffs with information about available healthcare options and resources for obtaining coverage.

The dispute between the parties is easy to state: plaintiffs claim that the 2009 CBA confirmed vesting of lifetime healthcare benefits for the beneficiaries on the employee's retirement; the company claims that the 2009 CBA obligated it to provide such coverage only for the term of that contract.  The plaintiffs claim the defendant's attempt unilaterally to end healthcare coverage breaches the CBA.  The defendant, in turn, contends it is only doing what the CBA expressly allows it to do.

Both parties focus, and properly so, on the "duration" provisions of the 2009 CBA.  The relevant language is two-fold.

First, the Insurance Program expressly stated that it was effective "[f]or the duration of *this Agreement*" (emphasis added): a plain statement meaning the duration of the 2009 CBA. (Doc. 19, Ex. 2).

Second, the 2009 CBA–as did prior CBAs–included a three-year express general durational provision under which the CBA expired on a date certain. Specifically, the 2009 CBA stated, "This Agreement shall continue in full force and effect until 11:59 PM, October 31, 2011." (Doc. 19, Ex. 1).

On August 1, 2016–about seven months after defendant provided its written notice of termination–plaintiffs filed this lawsuit. Plaintiffs allege that defendant, through the 2009 CBA, which, in their view, stood as part of an unbroken and continuing sequence of CBAs, contractually bound itself to provide lifetime retiree healthcare benefits. Termination of that coverage, plaintiffs assert, indefensibly breaches that contractual commitment and their rights under ERISA.

Plaintiffs seek a declaration that defendant's forthcoming termination of retiree healthcare breaches its cumulative contractual obligations and an injunction mandating compliance with its contractual and statutory responsibilities to maintain lifetime healthcare coverage. Plaintiffs also seek damages for any and all losses incurred as a result of defendant's allegedly wrongful conduct, as well as any other compensatory, punitive, and exemplary damages I deem appropriate.

**Standard of Review**

A complaint must contain a "short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In ruling on a motion to dismiss, I may consider "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).[4]

## Discussion

In response to plaintiffs' claim of entitlement to lifetime healthcare benefits, defendant argues plaintiffs are claiming a benefit to which they simply are not entitled. Emphasizing the significance of recent Supreme Court and Sixth Circuit decisions, Honeywell advances a core contention: namely, that durational terms in the 2009 CBA and its predecessors are unambiguous and fail to create vested entitlement to lifetime healthcare benefits.

The foundation for Honeywell's defense to plaintiff's claims is the Supreme Court's decision in *M & G Polymers USA, LLC,* et al., *v. Tackett*, — U.S. —, 135 S. Ct. 926, 933 (2015), which specifically (and emphatically) overruled *UAW v. Yard-Man, Inc.*, 716 F.2d 1476 (1983), and its pro-vesting analysis in a series of retiree healthcare benefit cases in our Circuit.

Under the *Yard-Man* approach, courts, typically finding contractual language ambiguous, applied inferences that routinely resulted in conclusions that CBAs promised lifetime healthcare benefits. *Tackett, supra,* — U.S. at —, 135 S. Ct. at 933. According to the *Tackett* Court, the *Yard-Man* methodology and its inferences conflicted with ordinary contract principles, thereby impermissibly "placing a thumb on the scale in favor of vested retiree benefits in all collective-bargaining agreements." *Id.* at —, 135 S. Ct. at 935.

---

[4] Plaintiffs' complaint expressly refers to the 2009 CBA and defendant's termination letters, and they are the basis for plaintiffs' breach of contract claim. Therefore, I may consider them.

The Supreme Court further stated that *Yard-Man* and its progeny "distort the text of the agreement and conflict with the principle of contract law that the written agreement is presumed to encompass the whole agreement of the parties." *Id.* at —, 135 S. Ct. at 936. The Court specifically rejected the *Yard-Man* inferences as contrary to ordinary contract law principles. *Id.* at —, 135 S. Ct. at 934-37.

The proper approach, according to *Tackett*, is to apply ordinary contract principles when interpreting CBAs. *Id.* at —, 135 S. Ct. at 933. Simply put, the parties' intentions, as expressed in the contract at issue, control–just as they do with an ordinary contract. *Id.*

> The Court of Appeals also failed even to consider the traditional principle that courts should not construe ambiguous writings to create lifetime promises. . . . Similarly, the Court of Appeals failed to consider the traditional principle that "contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreements." *Litton Financial Printing Div., Litton Business Systems, Inc. v. NLRB* 501 U.S. 190, 207, 111 S. Ct. 2215, 115 L.Ed.2d 177 (1991). That principle does not preclude the conclusion that the parties intended to vest lifetime benefits for retirees. Indeed, we have already recognized that "a collective-bargaining agreement [may] provid[e] in explicit terms that certain benefits continue after the agreement's expiration." *Ibid.* But when a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life.

*Id.* at —, 135 S. Ct. at 936-37 (internal citation omitted) (alterations in original).

Because the Sixth Circuit had relied on *Yard-Man*, the Supreme Court remanded for the court "to review the agreements at issue under the correct legal principles." *Id.* at —, 135 S. Ct. at 937.[5]

After *Tackett*, in *Gallo v. Moen, Inc.*, 813 F.3d 265, 268-69 (6th Cir. 2016), the Sixth Circuit held the CBAs at issue did not provide for unalterable, lifetime healthcare benefits. In light of

---

[5] On remand, the Sixth Circuit summarized its interpretation of the Supreme Court's decision in *Tackett* and ultimately remanded the case, instructing the district court to "use ordinary principles of contract law" to determine whether the agreements created vested lifetime benefits. *Tackett v. M&G Polymers USA, LLC*, 811 F.3d 204, 210 (6th Cir. 2016).

*Tackett,* according to the Sixth Circuit, ordinary contract principles "require[d] the conclusion that no vesting occurred." *Id.* at 274.

Reviewing the language of the most recent CBA, as well as prior CBAs, the court in *Gallo* concluded there was nothing committing the defendant to provide lifetime benefits. *Id.* at 269. The absence of such promise in the CBAs themselves was fatal to plaintiffs' claims: in the court's view, plaintiffs were asserting a contractual right as to which the parties had neither bargained nor agreed. *Id.* ("That is what matters, and that is where the plaintiffs fall short."). While the defendant in *Gallo* may have, at one time, desired to provide healthcare to retirees throughout the duration of retirement, "the question [was] whether the two parties signed a contract to that effect[, and] [n]othing of the sort appear[ed] in the collective bargaining agreements." *Id.*

Along with the absence of an express promise, the court emphasized the fact that every CBA was framed as a three-year agreement. *Id.* Stating a court "should not expect to find lifetime commitments in time-limited agreements," the court held "[w]hen a specific provision of the CBA does not include an end date, we refer to the general durational clause to determine that provision's termination." *Id.* (internal citation omitted).

The contracts at issue in *Gallo*, like, to some extent, the CBAs in this case, include such terms as "continued" to modify "benefits" and language such as "will be provided" and "will be covered." *Id.* The plaintiffs in that case, like the plaintiffs here, argued that "continued" language manifested an intent to provide lifetime benefits. *Id.* Disagreeing, the court held that the general durational clause governed; the "continued" and related provisions merely "*guarantee[d]* benefits until the agreement expire[d], nothing more." *Id.* (emphasis in original).

7

In reaching this result, the Sixth Circuit noted that "[in] overruling *Yard-Man*, . . . *Tackett* does not create a clear-statement rule in the other direction.  It instead eliminates the use of inferences and implications not grounded in 'ordinary principles of contract law' and explains the kinds of tools properly deployed in this setting." *Id.* at 274.  With this remark in mind, I interpret the CBAs at issue in this case.

Here, the dispositive question is whether, applying ordinary contract principles, I can find the contractual language on which Honeywell relies–namely the three-year duration provision–is ambiguous or not ambiguous.

If the CBA's language is clear and unambiguous, "its meaning is to be ascertained in accordance with its plainly expressed intent." *Tackett, supra,* — U.S. at —, 135 S. Ct. at 933 (internal citation and quotation marks omitted).  At that point, the parties' intent, as discernable in unambiguous language, controls. *Id.*

Only, however, where the parties use ambiguous language, so that their intent is obscure and uncertain, may I look to extrinsic evidence to figure out what the parties actually had in mind. *Id.* at —, 135 S. Ct. at 938 (Ginsburg, J., concurring).

In other words, *Tackett* and *Gallo* mandate reading the CBAs as written without resort to *Yard-Man* inferences or, unless pertinent language is ambiguous, recourse to extrinsic evidence.  In other words, I may turn to extrinsic evidence only if ambiguity makes it necessary to do so to understand the parties' intent and the meaning of the contract.

Though the fit between *Tackett* and *Gallo* and this case is not perfect, those cases and their holdings are more than sufficiently congruent to lead–and in my view, inescapably so–to the

conclusion that the pertinent language in this case is clear and expresses an unambiguous intent and agreement that the benefits were assured only for three years, not for life.[6]

First, and most importantly, "nothing in this or any of the other CBAs says that [Honeywell] committed to provide unalterable healthcare benefits to retirees and their spouses for life." *Gallo, supra,* 813 F.3d at 269. So it is here: nothing in the CBAs affirmatively states that Honeywell committed itself to provide healthcare benefits for life to the Insurance Program's beneficiaries. Given the unequivocal command of *Gallo*, that the relevant inquiry is "whether the two parties signed a contract to that effect," *id.,* the absence of an express promise of unalterable, lifetime healthcare benefits anywhere in the CBAs "is what matters, and that is where the plaintiffs fall short." *Id.*

Second, "not only do the CBAs fail to say that [Honeywell] committed to provide unalterable healthcare benefits for life to retirees, everything they say about the topic was contained in a *three-year* agreement." *Id.* (emphasis in original). Here, each CBA contained a general durational clause, providing a specific expiration date for "This Agreement." (Doc. 19, Ex. 1). Further, the CBAs–through the incorporated Insurance Program–likewise expressly indicated that healthcare benefits continue only "[f]or the duration of *this Agreement*" (emphasis added),[7] which duration, *per* the general durational clause, was three years. (Doc. 19, Ex. 2). The opinion in *Tackett* was

---

[6] I also take note of Judge Paul Borman's recent decision in *Sloan v. BorgWarner, Inc.*, 2016 WL 7107228 (E.D. Mich.). I reviewed that decision and find Judge Borman's analysis, although focused, most appropriately, on the *Tackett* and *Gallo* decisions, to be both persuasive and in line with those cases and my own analysis in this case.

[7] As noted above, the specific durational language, "for the duration of this Agreement" refers to the "Insurance Program," of which the healthcare benefits are part. Thus, this specific durational language applies to all benefits contained in the Insurance Program, including healthcare benefits.

clear–general durational clauses apply to provisions governing retiree benefits.  — U.S. at —, 135 S. Ct. at 936.  Thus, the unambiguous contractual language in each CBA bound the parties for three years only.  This is, with respect to healthcare benefits, "well short of commitments for life." *Gallo, supra,* 813 F.3d at 269.

Further, "while the authors of the CBAs opted not to say that retiree healthcare benefits were vested for life, they explicitly vested pension benefits for qualifying retirees." *Id.* at 270.  Here too–the CBAs in this case expressly vest pension benefits for life.  According to the Sixth Circuit, "[t]he difference in language demands a difference in meaning," and "the explicit guarantee of lifetime benefits in some provisions and not others means something." *Id.*; *see also UAW v. Skinner Engine Co.*, 188 F.3d 130, 144 (3d Cir. 1999).

I agree, particularly in light of ERISA's differing default vesting rules for pension benefits, on the one hand, and healthcare benefits, on the other.  That statute provides that pension benefits automatically vest on retirement.  29 U.S.C. § 1053(a).  Not so for healthcare benefits: those do not vest automatically.  *See Reese v. CNH Am. LLC*, 574 F.3d 315, 321 (6th Cir. 2009) ("[H]ealth benefits are purely a matter of contract–permitting a company to guarantee health benefits for life or to make them changeable, or even terminable, at the will of the company.").  Thus, if the parties here intended healthcare benefits to vest on retirement, they would have taken care to include express vesting language, as they did for pension benefits, to ensure that healthcare benefits would vest on retirement.  That the parties did not do so further evidences they did not intend or agree to the vesting of lifetime retiree healthcare benefits.

There is, to be sure, a distinguishing fact between this case and *Gallo*–namely, that there, but not here, the CBA included a reservation-of-rights clause in the company's favor.  In *Gallo*, the court

concluded such a clause evidences an intent not to create vested lifetime benefits. 813 F.3d at 270. The Sixth Circuit queried, "How can one simultaneously say that healthcare benefits are 'vested' but may be 'cancel[ed]' by the employer?" *Id.* (alteration in original).

I respond in two ways.

First, the court in *Gallo* did not base its conclusion solely on the inclusion of a reservation-of-rights clause. Rather, that clause was merely one of several considerations the court used in its application of ordinary contract principles to interpret the agreements. So too here.

The opening line of the court's analysis in *Gallo* makes that point clear: "*First and foremost*, nothing in this or any of the other CBAs says that Moen committed to provide unalterable healthcare benefits to retirees and their spouses for life. That is what matters, and *that is where the plaintiffs fall short*." *Id.* at 269 (first emphasis in original; second emphasis added). This is the main pillar of the court's opinion; the rest adds buttressing. Without it, though, the court's conclusion could and would still stand.

Second, a reservation-of-rights clause may allow a party not only to terminate benefits, but also to enhance them. In effect, such a clause looks in more than one direction.[8] Thus, inclusion of

---

[8] I understand and accept the plaintiffs' contention, made more than once at oral argument, that for profit corporations are not charities and tend typically to operate principally for the benefit of their shareholders. On the other hand, Honeywell continued to underwrite retiree healthcare benefits after the 2009 CBA expired. Thus, it could be viewed as having exercised the reservation-of-rights clause in favor of the retirees even though any obligation to do so under the CBA no longer existed. In any event, regardless of the company's motive, intent, or understanding of its obligations, the continuation of benefits was, in view of the conclusion I reach here, something that the contract did not require it to do.

In any event, for me to accept the plaintiffs' argument that Honeywell's continuation of benefits–its course of performance–manifests its intent when it signed the CBA, I would have to bypass the bedrock doctrine that a court considers extrinsic evidence of intent only *after* it finds the pertinent contract provision or provisions ambiguous. They are not, and I neither need nor can look elsewhere to interpret the CBA.

a reservation-of-right clause does not *ipso facto* support, much less compel, a finding of vesting. In this case, the clause cannot be read in insolation but must, as must all the CBA's provisions, be read as part of a whole. *Mastro Plastics Corp. v. NLRB*, 350 U.S. 270, 279 (1956). In sum: inclusion of a reservation-of-rights clause favoring the company is a distinction between this case and *Gallo*, but it makes no difference in my overall analysis and ultimate conclusion. Simply put, a reservation-of-rights clause is not necessary for me to conclude the CBAs clearly and unambiguously do not provide lifetime retiree healthcare benefits

## Conclusion

For the foregoing reasons, I, as the court in *Gallo* did, conclude that plaintiffs here seek to enforce a "right to healthcare benefits for life" based on "contracts [that] never make that commitment." 813 F.3d at 269. Because defendant is not contractually bound to provide plaintiffs with lifetime healthcare benefits, its forthcoming termination of such benefits does not breach any of its obligations under its contracts with the UAW.

It is, accordingly, hereby,

ORDERED THAT:

1. Defendant's motion to dismiss (Doc. 15) be, and the same hereby is, granted; and
2. Plaintiffs' motion for summary judgment and permanent or preliminary injunction (Doc. 21) be, and the same hereby is, deemed moot.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge